## Masonic Life Association of Western New York v. Robinson.

(Decided June 13, 1912.)

### Appeal from Jessamine Circuit Court.

1. Life Insurance—False and Material Answers in Application.—If an applicant for life insurance makes false and material answers in his application, it will defeat the policy; and, the question whether or not the applicant has been rejected for insurance, is material to the risk, and the answer if false will avoid the policy.

2. Life Insurance—Soliciting Agent is Agent of the Company.—An agent who solicits insurance will be treated as the agent of the company, and not the insured, notwithstanding a provision in the policy that he is acting as the agent of the insured; and, if such agent writes false answers to the questions propounded to the applicant, or by misleading statements induces the applicant to make false answers, when the applicant is acting in good faith and without any intention to deceive, the company will be estopped to rely upon the answers to defeat the policy.

3. Life Insurance—Examining Physician Agent of the Company.— The physician appointed by the company to examine the applicant is its agent and not the agent of the applicant, notwithstanding a clause in the policy providing that he shall be the agent of the applicant; and if such physician writes false answers to the questions propounded by the examiner's report, or by misleading statements induces the applicant to make false answers, when the applicant is acting in good faith and without any intention to deceive, the company will be estopped to rely upon the answers to defeat the policy.

4. Life Insurance—Acceptance of Premiums After Knowledge of Material and False Answers in Application.—If after an insurance company has accepted an application and issued a policy thereon, it discovers that there are false and material answers in the application that would defeat the policy, and after obtaining this knowledge it continues to demand and receive premiums, it will be estopped to rely on the falsity of the answers to defeat a recovery on the policy.

5. Life Insurance—By-laws not Attached to Policy.—By-laws of an insurance company that are not attached to or a part of the policy are not admissible as evidence against the insured.

HARRY D. WILLIAMS, SAMUEL M. WILSON for appellant.

E. E. HOOVER, E. H. GAITHER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the 29th day of September, 1902, the appellant life association issued to Sleet P. Robinson a policy of insurance upon his life for the sum of $2,000, payable to his wife, the appellee. In October, 1909, Sleet P. Robinson died, and the association refusing upon proper proof and demand to pay the insurance, the appellee brought this action to recover the amount due by the terms of the policy, and upon a trial before a jury a verdict was returned in her favor; and it is of the judgment on this verdict that the appellant association complains. A reversal is asked upon grounds: First, the failure of the trial court to direct a verdict in its favor upon the conclusion of the evidence; second, for error in not granting it a new trial on the ground that the verdict was flagrantly against the evidence.

For defense to the suit, the association set out in an answer and amended answer that the policy was issued "in consideration of and in reliance upon the representations and agreements made in the application;" and that it was provided in the application, which was attached to and made a part of the policy, that:

"If the said party to whom this certificate is issued shall fail to pay the sum to be paid by him as aforesaid, or if any misrepresentations, untrue or fraudulent statements, have been made in his application for membership in said association, * * * or if he in any other manner fails to comply with the conditions of the by-laws of the association, then this agreement shall cease and be of no effect and all claims of whatever nature, beneficial

or otherwise, arising under this certificate shall be for-
feited.   *   *   *   It is fully understood that the person
soliciting or taking this application, if other than a
general officer of the association, and also the medical
examiner, shall be the agents of the applicant as to all
statements and answers in this application."   *   *   *

It was also averred that in the by-laws referred to in
the application, it was provided that:

"Any person who shall make any untrue or fraudu-
lent statements, or conceal any fact regarding his health,
habits, or otherwise, in his application for membership
in this association, shall forfeit for the use and benefit
of the association, all payments made by him or rights of
membership and all benefits, rights or equities arising
out of his connection with the association."

It was further averred that Robinson was required
to answer certain printed questions stated in the appli-
cation, and to sign the application and file the same with
the association, which he did and that upon the state-
ments made by Robinson in the application, together
with the medical examination accompanying the appli-
cation, the association in accordance with its usual
course of business determined whether the application
should be received and the applicant insured or not.   It
was also averred that one of the questions asked by the
association in the application for insurance was "Has
any physician ever given an unfavorable opinion upon
your life as to insurance, or otherwise?" to which ques-
tion Robinson answered "No."   That another question
in the application was "Has your application for insur-
ance ever been rejected? ——— If so, name all com-
panies?" to the first part of which question he answered
"No."   That another question propounded in the appli-
cation was "Have you ever had any of the following
diseases: *   *   * diseases of the kidneys?" and to this
question in reference to diseases of the kidneys the ap-
plicant answered "No."   That another question in the
application was "By what doctor have you been treated
during the last five years?" to which the applicant an-
swered "None."

The answer then proceeded to state that:

"Prior to the making out of the application, Robin-
son had previously made applications for insurance to
the Mutual Life Insurance Company of Springfield,
Mass., the Washington Life Insurance Company of New

York City, and the Michigan Mutual Life Insurance Company of Detroit, Michigan, and in each instance his application for insurance had been rejected by said companies, and in the case of each and all of said rejections an unfavorable opinion upon the life of the applicant Robinson as to insurance or otherwise had been given by the physicians making an examination of the applicant for such insurance or by some physician whose duty it was to pass upon such applicant for insurance.''

It further averred that within five years next before the making of the application Robinson had consulted and had been under the treatment of a doctor or a physician, and that he died of a disease of the kidneys, and that it was because of indications of this disease that his application was rejected in the companies to which he applied for insurance. It further averred that:

''Relying upon the statements and representations made by Robinson and believing same to be true in his application for said certificate or policy of insurance, it accepted said application and issued said policy, when had defendant known or been informed of the truth concerning the matters hereinbefore specifically mentioned it would have declined said application and refused to have issued any insurance thereon. Defendant further says that because of the misrepresentations and untrue statements in the answers made in the application for membership in this association by Robinson, said contract of insurance was by the express terms thereof avoided, and all obligations upon this defendant were fully discharged and satisfied, and there now no longer exists upon the defendant under said certificate or policy of insurance any liability whatsoever.''

In a reply and amended replies, it was averred in substance that when the application was made and being written, the applicant was advised and told by the agent, who was then acting as the agent of the company and not the applicant, that the question ''Has your application for insurance ever been rejected?'' had reference only to whether the applicant had ever been rejected by the company he was then making application to, and that he so understood the question, and that the answer ''No'' was written by the agent after thus explaining the meaning of the question. It was also in substance averred that the physician who examined the applicant and who in making the examination and the medical report, was

acting as the agent of the company, had at the time full knowledge independent of any answers the applicant might then make of the present and past condition of his health and that the answers as to the past and present condition of his health relied on in defense of the suit were suggested by the physician or made from his knowledge of the health of the applicant and not upon information furnished by the applicant. It was also in substance averred that the association before or soon after it issued the policy obtained full information independent of the application and medical report of the truth or falsity of each of the answers made in the application and medical report, and that after obtaining this knowledge it continued to demand and collect the regular premiums and demanded and collected some of them after the death of the insured. That when it demanded and collected these premiums, it knew then as well as it knew when it relied on the falsity of the answers in the application and medical report to defeat the collection of the policy, that the answers relied on to defeat the policy were false. It was further averred that by reason of the fact that the answers relied on to defeat the collection of the policy in the medical report and the application were made, or induced to me made, by the agent of the company, and by reason of the further fact that with knowledge of their falsity it continued to demand and receive premiums, it wavied its right to and was estopped to rely upon the untruth of the answers to defeat the collection of the policy.

To so much of these replies as set up these estoppels, a general demurrer was sustained.

On the trial of the case, the association proved without contradiction that in 1894 Robinson applied to the Massachusetts Mutual Life Insurance Company for insurance and his application was rejected; that in 1896 he applied to the Washington Life Insurance Company and his application was rejected; and that in 1898 he applied to the Michigan Mutual Life Insurance Company and his application was rejected. It was further shown that in 1899 and in other years Robinson was treated for rheumatism. It was also the uncontradicted evidence that if the association had known of the previous rejections of Robinson and the fact that he had symptoms of kidney trouble and rheumatism, that his application would not have been accepted. The only evidence on be-

half of appellee was that made by the widow of the insured, who was the beneficiary in the policy, and her brother, both of whom testified in substance that when the application was made the condition of the health of the insured was good, and that he had not been treated by any physician for five years before that time.

With the evidence in this condition, the court instructed the jury in substance that if they believed that Robinson was asked and answered the following questions: (a) Has any physician given an unfavorable opinion upon your life as to insurance or otherwise? to which question he answered "No;" (b) Has your application for insurance ever been rejected? to which he answered "No;" (c) Have you ever had any disease of the kidneys? to which he answered "No;" (d) By what doctor have you been treated during the last five years? to which he answered "None;" (e) Have you ever had rheumatism to which he answered "Yes, * * * at times I have had slight rheumatic symptoms in the knee joints; doesn't inconvenience me;" and that these answers, or any of them, were substantially untrue, and that the company acting reasonably and naturally in the course of its business would not have accepted the application or issued the policy if the truth had been stated, they should find for the company; although Robinson may have believed them to be true or may not have intended to deceive the company.

On the issues made by the pleadings, after the averments of the replies before mentioned had been eliminated, the instructions presented in a concise and admirable manner the law of the case. But looking at the issues in the case as they were presented to the jury together with the evidence we think the motion of the appellant for a peremptory instruction at the conclusion of all the evidence should have been sustained. It was shown without contradition that the insured had previous to his application to the appellant association been rejected by three insurance companies, and that if the appellant had known of these rejections or any of them it would not have issued the policy sued on.

Section 639 of the Kentucky Statutes provides that: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrep-

resentation, unless material or fraudulent, prevent a re-
covery on the policy.''

Under this statute, we have held that a statement as
to rejections by other companies is material to the risk,
and if false is sufficient to avoid the policy, when it is
shown by the uncontradicted evidence, as in this case,
that the company would not have issued the policy had it
known of the rejections, and this is so whether the in-
sured at the time of making the application remembered
or had in mind the fact of previous applications and re-
jections or not, and without regard to whether his an-
swer was or not made in good faith and without any in-
tention to deceive. Blenke v. Citizens Life Ins. Co., 145
Ky., 332; Western & Southern Life Ins. Co. v. Quinn,
130 Ky., 397; Provident Savings Life Assurance Society
v. Dees, 120 Ky., 285; Provident Savings Life Assurance
Society v. Whayne, 131 Ky., 84.

Coming now to the question of the correctness of
the ruling of the trial court in sustaining the demurrer
to the replies, we think the court committed error. If
the answers in the application as stated in the replies
were written by the agent representing the insurance
company who took the application, and this agent ad-
vised the applicant that the question ''Has your applica-
tion for insurance ever been rejected?'' had reference to
the application in the company to which application was
then being made, and it was so understood by the in-
sured, and the answer, ''No,'' was made in good faith
and without any intention to deceive, the company can-
not avail itself of the falsity of this answer to defeat the
policy. And so, if the answers in the medical report
were written by a physician employed by the insurance
company, who was acting as its agent in making the
examination, and the answers so written by the phy-
sician and agent were made from his knowledge or were
suggested by him or the applicant while acting in good
faith and without any intention to deceive, was induced
by the misleading statements or suggestions of the phy-
sician to make false answer the company can not rely on
the falsity of the answers to defeat the policy. And, if
the company after having received knowledge and infor-
mation that the material answers in the medical report
or in the application or any of them were untrue, con-
tinued to demand and accept payment of premiums from
the insured, it will be estopped from relying upon the

falsity of the answers to defeat the policy.　Mutual Life Ins. Co. v. Daviess, 87 Ky., 541; Wright v. Northwestern Mutual Life Ins. Co., 91 Ky., 208; Prudential Ins. Co. v. Cummins, 19 Ky. L. R., 1770; Manchester Assurance Co. v. Dowell, 25 Ky. L. R., 2240; German Ins. Co. v. Yellow Poplar Lumber Co., 27 Ky. L. R., 105; Continental Ins. Co. v. Thomason, 27 Ky. L. R., 160.

The agent who solicits insurance, and the physician who acting as agent of the company examines the applicant, are each within the scope of their respective employments the agents of the insurance company, and not the agents of the applicant　And if the answers in the application or in the medical examination are in fact made by the agent or the physician or by his direction or suggestion and not by the applicant, the company cannot avoid the obligation of its contract upon the ground that in some material respects the answers were false if the applicant acted in good faith and without any intention to deceive.　It will be estopped to rely upon the acts of its agent to defeat a contract that it authorized them to assist in perfecting and procuring.　Nor can it avoid the force of this rule by inserting as was here done in the policy that the agent or the physician acts as the agent of the insured in taking the application or in making the medical examination, as such a statement in the policy is, generally speaking, in direct variance with the actual facts.　As a rule to which there are few exceptions, the insurance company selects its own agents to solicit insurance, without consulting or advising with the public or the particular person whose application is sought. And when such an agent undertakes to solicit insurance, it is idle to say that he is acting as the agent of the person whose insurance he solicits.　The company knows as does everyone else that insurance agents are the agents of the insurance company and not the agents of the person whose insurance they solicit.　What we have said with reference to agents applies with equal force to the physicians appointed by the company to make the medical examination and report.　These physicians are in no manner agents of the applicant; they are not selected or designated or in any way controlled by him.　And when an insurance company appoints and selects agents or medical examiners, and these agents or medical examiners acting for the company make or induce the applicant to make—when he is acting in good faith and

without any intention to deceive—misleading or false answers in the application or medical report the company will not be permitted to defeat a recovery upon a policy issued on the faith of these statements upon the ground that they were material and false, when they were in fact made not by the applicant but by one of its agents. Nor should an insurance company, after having knowledge and information that the application or the medical examiner's report contains false answers to material questions that would ordinarily cause the rejection of the risk and defeat the collection of the policy, be allowed thereafter to demand and collect premiums, and then rely upon these false answers to avoid the payment of the policy. When an insurance company has information of this character, in justice to the insured and in the honest conduct of its business, it ought to at once notify the insured of the facts in its possession and advise him that his policy is canceled or take such action as may be necessary and proper to inform the insured of the condition of his policy and his relation to the company. It would be manifestly unfair to permit an insurance company with full possession of facts that it intended to rely on to defeat the collection of the policy whenever it matured, to continue to demand and receive premiums from the insured as if his policy was a valid and binding contract that it intended to perform when the time of performance came. Fitzpatrick v. Life Ins. Co., 56 Conn., 116; 7 Am. St. Rep., 288; Morrison v. Wisconsin Odd Fellows Mutual L. Ins. Co., 59 Wis., 162; Northwestern Mutual L. Ins. Co. v. Amerman, 119 Ill., 329; Chicago Guaranty Life So. v. Ford, 104 Tenn., 533; Modern Woodmen of America v. Coleman, 68 Neb., 660; Germania Ins. Co. v. Rudwig, 80 Ky., 223. The company, of course, has the right to depend upon the truthfulness of the answers in the application, and it need not make further inquiry into their verity; but, if it sees proper to do so, and ascertains they are false, and is put in possession of information that would have induced it to decline the risk, it must then act as it would have acted if it had this information when it issued the policy. In other words, it must take prompt steps to terminate the contract. It cannot hold on to the benefits of the contract and relieve itself of the burdens. By accepting and holding on to the premiums, the company will be deemed to have

elected to waive the provisions of the policy that gave it the right to insist on its invalidity. We may also here add that the court properly declined to permit the provisions of the by-laws referred to in the application to be read as evidence. These by-laws were not attached to or a part of the policy, and so were not admissible as evidence against the insured. Section 679, Kentucky Statutes; Letzlar v. Pacific Mutual Life Ins. Co., 119 Ky., 924; Providence Savings Life Assurance Society v. Puryear, 109 Ky., 381.

On the return of the case, the demurrer to the parts of the replies indicated should be overruled, and the association permitted to file such other pleadings as may be necessary to form an issue upon the estoppels relied on in the replies. If, upon a retrial of the case, the appellee introduces sufficient evidence to warrant a submission of the issues presented by these pleas of estoppel, or any of them, the case should go to the jury under proper instructions upon these issues, or the one supported by evidence. But, if the evidence is not sufficient to warrant the submission of these issues, or any of them, to the jury, and the evidence is substantially the same as it was on the last trial, the court should direct a verdict for the association.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.