THE TEXAS LIFE INSURANCE COMPANY V. FRANCES CORK.

No. 6510.   Decided January 22, 1936.
Rehearing overruled February 19, 1936.
(89 S. W., 2d Series, 779.)

*Kyle Vick,* of Waco, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the

policy had a loan value of $78, since the undisputed facts show that the insured only paid two annual premiums and the policy provides specifically that before said loan value was available the premium for the third year had to be paid. Southland Life Ins. Co. v. Hopkins, 244 S. W., 989; Underwood v. Security L. & A. Ins. Co., 108 Texas, 381, 194 S. W., 585; Aetna Life Ins. Co. v. Wimberly, 102 Texas, 46, 112 S. W., 1038.

*J. W. Chandler, Jr., Pitman & Pitman,* of Palestine, for defendant in error.

It was error to hold that the policy did not have a loan value of $78, and in holding that the clause "provided all premiums have been duly paid" applied particularly to the third annual premium. American Natl. Ins. Co. v. Tabor, 230 S. W., 397.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Defendant in error, Frances Cork, brought this suit against The Texas Life Insurance Company of Waco, Texas, upon a twenty year endowment non-participating special life policy in the sum of $1,000. She sued for the amount of the policy, for statutory interest, and attorneys fees in the sum of $400. Upon trial before the court without a jury she recovered judgment for $957.93. The Court of Civil Appeals affirmed the judgment. 59 S. W. (2d) 334. We are confronted at the outset with defendant in error's motion to dismiss for want of jurisdiction. The grounds upon which the holdings herein are predicated require that the motion be overruled, which is accordingly done.

The policy was issued November 17, 1927, and provides for a premium of $71.01 payable annually in advance for twenty years. The second premium, due November 17, 1928, was paid. On November 17, 1929, a note was given for the third annual premium, due October 17, 1930, bearing interest at the rate of 6% per annum until paid. No premium was paid or settled for after the second annual premium. The insured, William Cork, died May 21, 1931.

The immediate effect of the giving of the premium note by the insured was not to pay the third annual premium, as found by the trial court, but by the terms of the note itself the effect was to continue the insurance in force until midnight of the due date of the note, October 17, 1930. The note stipulates what its effect will be if paid on or before its due date, and what it will be if not so paid. If paid within the time provided, all rights under the policy thereupon become the same as if the premium

had been paid when due. In other words, the third annual premium would thereby have been paid. If not paid, however, within the time provided, the policy is deemed to have ceased and determined on the date when said premium was due, "and all rights to extended or paid-up insurance shall be for the term and amount secured by said policy on and from the day when said premium became due," November 17, 1929.

The pertinent provisions of the policy with immaterial stipulations deleted therefrom are:

"Conditions Regarding Payment of Premiums. All premiums are payable in advance. * * * If any premium is not paid on the date when due this policy shall be null and void, except as hereinafter provided. Notice of any and all premiums due are given and accepted by the delivery and acceptance of this policy and no notice of the due date of a premium shall be considered a precedence or waiver of any provision of this policy, no matter how often repeated. A grace period of one month is allowed for the payment of any premium after the first. * * *

"Cash Loans. At any time after the second policy year *and while this policy is in full force,* (Italics ours) the insured can borrow from the company on the sole security of this policy, properly assigned to and endorsed by the company, any sum within the loan value specified in the table below, from which loan value any indebtedness on the policy and any unpaid premiums for the current policy year will first be deducted. The company shall furnish the form for the assignment required hereunder and upon completion of the loan will return the policy to the insured. Interest, at a rate of six per cent per annum, will be collected out of the amount of the loan to the end of the current policy year and is thereafter payable annually in advance. Failure to repay any such loan, or to pay interest thereon, shall not avoid this policy unless the total indebtedness thereon to the company shall equal or exceed its loan value.

"Automatic Premium-Loan, Non-Forfeiture. If at any time after the expiration of the second policy year, if all premiums have then been duly paid, any premium or installment thereof is not paid within the time allowed for its payment the company * * * will forthwith advance the amount of such premium * * * with interest thereon at the rate of six per cent per annum payable in advance out of the loan value then available under the policy, provided the total indebtedness to the company on account of this policy, if any, at the time and any interest that might be due thereon, together with such advance shall not

exceed the total loan value then available. * * * The insured may at any time, repay such advance or any other indebtedness on the policy but failure to do so shall not avoid the policy until the total indebtedness thereon shall equal or exceed the loan value, in which case this policy shall automatically cease and determine.

"Table of Loans and Non-Forfeiture Values.

| After Expiration of Policy Year the | Loan Value | Paid-Up Endowment Policy | Cash Value |
|---|---|---|---|
| 1st | $ 0 | $ 0 | $ 0 |
| 2nd | 78 | 0 | 0 |
| 3rd | 119 | 116 | 78 |
| 4th | 159 | 172 | 119 etc." |

■ As the note was not paid on or before its due date, the "Automatic Premium-Loan, Non-Forfeiture" clause did not become effective. It will be noted that this clause provided that if at any time after the expiration of the second policy year, *provided all premiums have been duly paid,* and any premium is not paid within the time allowed therefor, the Company will forthwith advance the amount of such premium with interest thereon at the rate of six per cent per annum, payable in advance *out of the loan value then available under the policy.* Upon expiration of the second policy year the premium for the third year became due, being payable in advance. The third year premium was therefore necessarily included with those required to be paid as a prerequisite to make available any loan value the policy might have. The thirty day grace period provided within which premium may be paid does not alter or extend the term of the policy year. Furthermore, it appears from the "Table of Loans and Non-Forfeiture Values" that the loan value available after the expiration of the second policy year, even when all the requisite conditions have been met, is only $78.00; whereas the automatic premium loan plan provides that the Company will forthwith advance the amount of the premium with interest thereon at the rate of six per cent per annum payable in advance. The premium and interest thereon at the prescribed rate for a year in advance being $79.51, it is obvious that the amount of loan provided under the automatic plan is less than the amount required to be advanced

and that the insured did not bring himself within its terms. In fact it appears that the policy at such time had no available loan value, the third premium which was then due not having been paid. The policy therefore lapsed as of date November 17, 1929, for nonpayment of the premium note.

While the note provides in effect that although not paid when due it could be retained by the Company as a valid obligation against the insured to the amount of one-half its face value, it further provides in this connection that such amount is collectible, "as compensation for the rights and privileges hereby granted and as earned premium for the insurance granted from maturity of said premium to the maturity of this note * * *; and the payment to or collection by said company of said sum shall not revive said policy or any of its provisions."

■ The provisions of the note constitute a binding and enforcible contract between the Company and the insured, notwithstanding it was made subsequent to the issuance of the policy and its terms are not set out in the policy. Pacific Mutual Life Ins. Co. v. Merritt B. Thurman, Jr., 126 Texas, 363, 89 S. W. (2d) 202, and cases there cited; also Robnett v. Cotton States Life Ins. Co., 148 Ark., 199, 230 S. W., 287; French v. Columbia Life & Trust Co., 80 Or., 412, 156 Pac., 1042, Anno. Cas., 1918D, 484; Fidelity Mutual Life Ins. Co. v. Price, 117 Ky., 25, 77 S. W., 384.

■ The trial court concluded as a matter of law that the acts of the Company in writing certain letters to the insured waived its right of forfeiture for non-payment of the note.

The first letter, written prior to the due date of the note, stated that a blank renewal note was inclosed which when properly signed and returned, would take up and extend the time of payment of the old note to November 17, 1930, by paying in cash at the same time the sum of $52.66. The contents of this letter, of course, do not constitute a waiver of forfeiture which had not then occurred. The letter written October 27, 1930, carried advice to the insured that his policy had lapsed, and carried also the Company's form application for reinstatement of his insurance. There was nothing in any of the Company's letters indicating that it did not intend to exercise any of the rights it had. All of the letters written subsequent to the due date of the note advised that reinstatement was contingent upon evidence of insurability satisfactory to the Company. The entire negotiation thereafter was with respect to the reinstatement. The Company promptly advised the insured that his

policy had lapsed, and in none of its subsequent letters did the insured say anything that remotely suggested the Company recognized the continued validity of the policy. The facts therefore do not bring the case within the holding of Equitable Life Ins. Soc. v. Ellis, 105 Texas, 526, 147 S. W., 1152, 152 S. W., 625, relied upon by defendant in error. In that case the continued validity of the policy after non-payment of premium was recognized in the subsequent offers and negotiations of the Company.

The trial court's judgment should have been for plaintiff in error. The opinion of the Court of Civil Appeals affirming the judgment is erroneous. The judgments of both courts are reversed and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court January 22, 1936.

Rehearing overruled February 19, 1936.