MRS. CLYDE DILLEHAY V. TEXAS LIFE INSURANCE COMPANY.

No. 6904.   Decided July 14, 1937.
Rehearing overruled October 13, 1937.
(107 S. W., 2d Series, 369.)

*J. V. Patterson, H. E. Lobdell* and *C. T. Gettys,* all of Decatur, for plaintiff in error.

Under the terms of the policy, if the premium was not paid within the period of grace, the insurance would automatically continue as term insurance, the indebtedness will be deducted from the net value of the continued insurance, and the balance used to continue the policy. Gilley v. Missouri State Life Ins. Co., 116 Texas 43, 285 S. W. 807; American National Ins. Co. v. Tabor, 111 Texas 155, 230 S. W. 397; First Texas Prudential Ins. Co. v. Sorley, 272 S. W. 346.

*Kyle Vick,* of Waco, for defendant in error.

Under the undisputed evidence and in accordance with the provisions of the policy the net value of the continued insurance was less than the indebtedness against the policy, therefore the policy lapsed and it was not error for the Court of Civil Appeals to render judgment for the insurance company. Texas Life Ins. Co. v. Cork, 126 Texas 627, 89 S. W. (2d) 779; Texas Life Ins. Co. v. Mueller, 96 S. W. (2d) 403; Southland Greyhound Lines v. Cotten, 55 S. W. (2d) 1066.

*McBride, Hamilton, Lipscomb & Wood, William Lipscomb,* and *H. B. Houston,* all of Dallas, and *McClellan, Lincoln & Williams,* of Waco, filed briefs as amici curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On the 5th day of March, 1923, defendant in error, Texas Life Insurance Company, issued and delivered to Richard Hubbard Dillehay a life insurance policy in the sum of $2,000.00. Plaintiff in error, Mrs. Clyde Dillehay, wife of the insured, was beneficiary. The annual premium was $56.70. The premiums were payable in advance. The insured paid eight annual premiums, and on March 5, 1930, the policy, according to the loan and nonforfeiture table of values endorsed thereon, had a face value of $306.00 and a loan value of $358.00; which loan value was subject to the provisions relating to cash loans shown at top of page 3 of the policy. On November 27, 1930, Dillehay borrowed from the company the sum of $306.00, which was the full amount

of the loan value for the eighth policy year, and the cash value of the policy at the beginning of the ninth policy year. On March 5, 1931, the insured changed the manner of paying premiums from annual to semiannual payments; the semiannual premium being $29.48. On that date he made a semiannual payment which extended the policy to September 5, 1931.

At the time Dillehay made the semiannual premium payment on March 5, 1931, he paid $15.30, which was one year's interest in advance on his loan of $306.00. Dillehay defaulted in the semiannual premium payment due September 5, 1931, and died January 8, 1932. Claiming that the policy had lapsed, the company denied liability, and this suit resulted. A judgment in the district court in favor of plaintiff in error was reversed by the Court of Civil Appeals and judgment rendered in favor of defendant in error. 79 S. W. (2d) 342.

■ The policy in question appears to be in accordance with the provisions of Article 4732 of the Revised Statutes of 1925. It is presumed that the Department of Insurance did its duty and had ascertained that the policy in question complied with the requirements of the law. Gilley v. Missouri State Life Ins. Co., 116 Texas 43, 273 S. W. 825. According to the provisions of the policy in question it was not forfeited on failure to pay the semiannual premium payment on September 5, 1931, but automatically continued as "term insurance." The policy contains a section entitled "Values Automatically Adjusted in Case of Indebtedness." In this section it is provided as follows: "If there is such indebtedness the cash value will be diminished thereby, the amount of paid-up life policy reduced proportionately, and the *continued insurance* modified in the following manner: The indebtedness will be deducted from the *net value of the continued insurance* and the balance used to continue this policy for its face amount less the indebtedness for such term as said *balance* may secure at net single premium rates, by the standard hereinafter named, for the attained age of the insured." (Emphasis ours.) Under the heading of "General Provisions" is the following: "The reserve on this policy and the *net value of the term of continued insurance* and paid-up life policy hereunder shall be computed upon the American Experience Table of Mortality, with interest at three and one-half per cent. per annum." (Emphasis ours.)

■ It is undisputed that the "net value of the continued insurance," when computed upon the "American Experience Table of Mortality, with interest at three and one-half per cent. per annum," amounted on September 5, 1931, to $301.00. This was

$5.00 less than the indebtedness due by insured to the company, and upon this basis there was no balance to be used in continuing the policy. In our opinion, this method for ascertaining the "net value of continued insurance" is not in violation of law. At the time the policy was automatically continued as term insurance there was $7.60 unearned interest upon the loan which had been paid in advance. While there is nothing in the policy which required the company to use this for the purpose of continuing the policy, and nothing which prohibited it from doing so, it nevertheless did use $5.00 of that amount in paying the balance of the indebtedness, and used the balance of $2.60 for the purpose of continuing the insurance. This, however, was not sufficient to carry the policy to the date of the death of the insured. In our opinion, the company was not required to use the full amount of this unearned interest in extending the insurance, in view of the fact that there was a balance of $5.00 due on the indebtedness, after crediting the net value of the continued insurance.

It is the contention of plaintiff in error, however, that as the policy on September 5, 1931, had a cash value of $332.00, and a loan value of $358.00, the company should have used the excess in these amounts above the indebtedness to continue the insurance. In the absence of an express provision in the policy to that effect, the company was not required to automatically apply the excess in loan or cash value to the continuance of the policy. Great Southern Life Insurance Company v. Wester, 127 Texas 274, 92 S. W. (2d) 238.

The method provided in the policy for continuing the insurance, in the absence of premium payments, being lawful, we think it furnished the exclusive method of doing so, in the absence of the insured availing himself of other privileges for that purpose. Under such method there was not sufficient balance due Dillehay on September 5, 1931, to continue the policy to the date of his death.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court July 14, 1937.

Rehearing overruled October 13, 1937.